# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                                               Case No. 04-CR-106

**MICHAEL PAGE**
        **Defendant.**

---

## SENTENCING MEMORANDUM

Johnny Ray White asked defendant Michael Page to give him a ride to the bank so he could make a deposit. Defendant drove to the bank, parked his car about half a block away, and White went inside. After a few minutes, White returned, got back into the car, and defendant drove off. Defendant soon saw flashing lights in his rear view mirror, and White told him to "hit it" because he had just robbed the bank. Defendant proceeded to lead police on a high speed chase, eventually abandoning his car and fleeing on foot. The police apprehended defendant and recovered the proceeds of the robbery, the gun White used and the ski mask he wore, but White got away.

Defendant cooperated with law enforcement, leading to White's arrest and conviction. Because he did not know about White's plan to rob the bank, the government charged defendant with accessory after the fact under 18 U.S.C. § 3. Defendant pleaded guilty, and the probation office prepared a pre-sentence report ("PSR"), which set his offense level at 19 and his criminal history category at I, for an imprisonment range of 30-37 months.[1]

---

[1] U.S.S.G. 2X3.1 provides that in accessory after the fact cases the offense level is 6 levels lower than that applicable to the underlying offense. White's offense level on the

Neither party objected to the PSR's guideline calculations, but the government moved for a downward departure under U.S.S.G. § 5K1.1 based on defendant's substantial assistance, and defendant requested a non-guideline sentence of probation. I granted the government's motion and further reduced defendant's sentence because an unusual and highly traumatic event in his recent past likely affected his decision to flee and because of his otherwise positive character and background. However, due to the severity of the crime, I considered a probationary sentence insufficient and instead sentenced defendant to seven months in prison followed by three years of supervised release. In this memorandum, I address the parties' contentions and set forth more fully the reasons for the sentence imposed.

## I. SENTENCING PROCEDURE

In light of United States v. Booker, 125 S. Ct. 738 (2005), I typically follow a three-step sentencing process. First, I determine the applicable advisory guideline range, resolving any factual disputes that might affect the sentence. See United States v. Dean, 414 F.3d 725, 730 (7th Cir. 2005). Second, I determine whether, pursuant to the Sentencing Commission's policy statements, any departures from the advisory guideline range clearly apply. Finally, I determine the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Beamon, 373 F. Supp. 2d 878, 880 (E.D. Wis. 2005).

---

bank robbery count was 28: base level 20, U.S.S.G. § 2B3.1(a), plus 2 because the property of a financial institution was taken, § 2B3.1(b)(1), plus 5 because he brandished a firearm, § 2B3.1(b)(2)(C), and plus 1 based on the amount taken ($11,590), § 2B3.1(b)(7)(B). Defendant received a three level reduction for acceptance of responsibility, § 3E1.1, making his final level 19 (28-6-3).

2

In the present case, because neither party objected to the PSR's factual statements or guideline calculations, I proceeded to the second and third steps.

## II.  DEPARTURE MOTION

In ruling on a substantial assistance motion, I consider:

(1) the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

I give substantial weight to the government's evaluation of the extent of the defendant's assistance, but the extent of the departure granted is within my discretion. In order to measure the extent of the reduction, I link the departure to the structure of the guidelines and typically grant something on the order of a 2 level adjustment for each § 5K1.1 factor found to be fully present. See United States v. Washington, 293 F. Supp. 2d 930, 932-33 (E.D. Wis. 2003).

In the present case, defendant debriefed and testified against White resulting in White's conviction of armed bank robbery and use of a firearm during a crime of violence, for which he was sentenced to 148 months in prison. Because the bank employees could not identify White, the police had no suspects until defendant came forward. Further,

3

defendant's trial testimony contributed significantly to White's conviction.  Therefore, I granted a 2 level reduction for the first § 5K1.1 factor.

According to the government, defendant provided truthful and complete information: he gave a detailed statement concerning the crime; he voluntarily provided DNA; and he identified witnesses who connected a distinctive jacket worn by the robber to White.  The jury clearly relied on defendant's testimony, and the district judge who presided at White's trial seemed impressed by it.  The government stated that defendant testified convincingly.  Therefore, I granted 2 levels for the second factor.

Defendant debriefed and provided trial testimony, but he did not engage in other active cooperation, such as making controlled buys or wearing a wire.  Therefore, I granted a 1 level reduction based on the nature and extent of the cooperation.

Finally, defendant did not risk or suffer injury by testifying, and he did not cooperate immediately upon arrest.  Thus, I granted no reductions for the fourth and fifth factors.  In total, I granted a 5 level reduction making defendant's imprisonment range 15-21 months.

### III.  SECTION 3553(a)

In imposing sentence, I consider the factors set forth in § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

I consider the statutory factors sequentially. First, I consider the specifics of the case, i.e. the nature and circumstances of the offense and the history and characteristics of the defendant. Second, I consider the facts of the case in light of the purposes of sentencing and the needs of the public and any victims. Finally, I translate my findings and impressions into a numerical sentence. In so doing, I take into account the kinds of sentences available, the sentencing range established by the Sentencing Commission, any pertinent policy statements issued by the Commission, and any restitution due the victims of the offense. In imposing a specific sentence, I also seek to avoid unwarranted sentence disparities. United States v. Leroy, 373 F. Supp. 2d 887, 894-95 (E.D. Wis. 2005); see also United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005). My ultimate task is, after considering all of the above circumstances, to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in § 3553(a)(2). United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005).

**A.   Specifics of Case**

**1.   Nature of Offense**

Defendant drove White to the bank thinking White was going to make a deposit, but instead White robbed the bank at gun point. Defendant learned of the robbery when a police car began following, and White shouted at him to go because he had just robbed

5

the bank. Defendant then led officers on a high speed chase on snow covered roads, before fleeing on foot. Defendant had no idea that White intended to rob the bank, but his conduct in assisting him after the fact was aggravated in that it endangered other citizens in the area of the chase, as well as the officers.

### 2. Character of Defendant

Defendant was forty-five years old, married for more than twenty-five years, and lived with his wife and their eleven year old daughter. He also had a grown daughter who lived in the Milwaukee area. All of them appeared in support at defendant's sentencing.

Defendant had another child, Michael Page, Jr., who died under tragic circumstances. In April 2002, Michael allegedly fired a handgun following an altercation with his girlfriend. Officers spotted him in his car and took chase, reaching high speeds. During the chase, Michael called 911 and stated that he was afraid and just wanted to go to his parents' home. He pulled into the driveway and somehow ended up standing on the roof of his car. An officer thought he saw Michael reach for a weapon and shot him. Defendant witnessed his son die. An inquest cleared the officers, but the incident and its aftermath left defendant with a profound distrust of law enforcement. After his arrest on the instant offense, defendant stated that based on the incident involving his son he feared the police and thought that if he did not flee they would kill him. Nevertheless, defendant set aside his distrust of law enforcement and cooperated with the government, impressing the officials who worked with him.

The government agreed that defendant's conduct in this instance was aberrant and that he had otherwise lived a positive life. A high school graduate, he had no criminal record and a solid employment history, working as a butcher, security guard and mechanic.

6

He strongly opposed drug use and considered it a form of genocide in the African-American community. He performed well on pre-trial release, complying with all conditions.

**B.     Purposes of Sentencing and Needs of Public and Victims**

I viewed defendant's offense as a single, albeit drastic, lapse in judgment and agreed with the government's statement that defendant was unlikely to re-offend. Nevertheless, I concluded that there was a need for a period of confinement to reflect the seriousness of the offense, promote respect for the law, provide just punishment and afford adequate deterrence to criminal conduct. Defendant owed no restitution because police recovered the proceeds of the robbery. The bank reported that its employees had a difficult time coping after the robbery, but their trauma resulted from White's conduct not defendant's.

**C.     Imposition of Sentence**

**1.     Consideration of Guidelines**

After the departure, the guidelines called for a term of 15-21 months. However, for two reasons, I found this range somewhat greater than necessary to satisfy the purposes of sentencing.

First, the parties agreed that the trauma of watching the police kill his son likely affected defendant's ability to respond appropriately when the police attempted to stop his vehicle. The government aptly described defendant as a "damaged person." Clearly, defendant did not respond to the police car's flashing lights in an objectively reasonable manner; he should have pulled over immediately and told police that White committed the robbery alone. A reasonable person in defendant's situation would not have expected the

7

police to harm him and fled to avoid that perceived harm. Significantly, defendant did not argue that his past trauma and resulting distrust of police provided a defense to his crime, cf. People v. Goetz, 497 N.E.2d 41, 50 (N.Y. 1986) (holding that a legally competent defendant who commits "a serious crime [cannot be allowed] to go free simply because that person believed his actions were reasonable and necessary to prevent some perceived harm"), but rather that they bore on the extent of his culpability. I agreed. It is entirely appropriate to consider such subjective matters in imposing sentence. See Ranum, 353 F. Supp. 2d at 990 (citing Wisconsin v. Mitchell, 508 U.S. 476, 485 (1993)). Because the guidelines did not adequately account for defendant's past trauma, which directly affected his ability to respond appropriately to the situation that confronted him, I concluded that a sentence below the guideline range was appropriate.

Second, the guidelines did not account for defendant's admirable personal characteristics: his solid employment history, his family ties and his staunch anti-drug attitudes. See Ranum, 353 F. Supp. 2d at 986. These are qualities that should be encouraged. Thus, I also imposed a non-guideline sentence because of the failure of the guidelines to account for them.

For the above reasons, I imposed a sentence two levels below defendant's advisory guideline range. See United States v. Alexander, No. 04-CR-253, 2005 U.S. Dist. LEXIS 17217, at *18 (E.D. Wis. Aug. 9, 2005) (stating that courts may continue to use guideline terms in imposing a non-guideline sentence). This produced a range of 10-16 months. I concluded that a sentence at the low end was reasonable. I found that any greater reduction would fail to adequately serve the purposes of sentencing under § 3553(a)(2).

### 2. Policy Statements

State authorities initially charged defendant with fleeing and held him in state custody for three months before dismissing the charge in favor of federal prosecution. Defendant requested a sentence adjustment to account for this time spent in state custody, which the Bureau of Prisons ("BOP") would not credit. See 18 U.S.C. § 3585(b). The Commission's policy statement § 5G1.3(b) supported his request. Section 5G1.3(b) requires a court to adjust a sentence to account for any period of imprisonment already served arising out of the same conduct as in the instant offense if the court determines that the BOP will not credit such time. U.S.S.G. § 5G1.3(b). Further, under application note 4, a court may depart when the defendant has completed serving a sentence to which § 5G1.3(b) would have applied. U.S.S.G. § 5G1.3 cmt. n.4. While defendant had not served a state "sentence," he had spent time in custody based on the same conduct. Thus, the policy underlying § 5G1.3(b) supported a sentence adjustment in the instant case. Pursuant to § 3553(a)(5), I gave effect to this policy and reduced the sentence by three months. See Alexander, 2005 U.S. Dist. LEXIS 17217, at *20-21.

### 3. Disparity

This was a truly unusual case – a father traumatized by the death of his son at the hands of the police was confronted with a decision whether to flee or face the police himself, with an armed bank robber in his car. For the reasons stated, I found that the circumstances warranted a sentence outside the guidelines, but based on the case's unusual facts, the sentence did not create <u>unwarranted</u> disparity.

9

## IV. CONCLUSION

Therefore, I sentenced defendant to the custody of the Bureau of Prisons for seven months, followed by three years of supervised release. This sentence was sufficient to punish defendant for his reckless conduct but adequately took into account the particular circumstances of the case. Other conditions of sentence appear in the judgment.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin, this 25th day of August, 2005.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge